In the matter of WILLIAM BOWERS.

[Decided April 24th, 1918.]

1. Where a husband sued for divorce on the ground of desertion, and the wife answered denying the desertion and charging constructive desertion, a letter written to the wife by the husband's father requesting her to consent to the divorce, making certain promises to her, inasmuch as it might have the effect of fraudulently imposing on the court, is a clear contempt.

2. Where the father of the husband goes to the wife's solicitor and threatens to bring political or other pressure to compel the solicitor to withdraw from the case, such act is a clear contempt.

3. The act of 1917 (*P. L. 1917 p. 71*) is unconstitutional, in so far as it may be claimed to apply to the court of chancery.

4. The act (*1 Comp. Stat. 1910 p. 442 § 82*) does not apply to a contempt committed by attempting to induce a defendant in a divorce action to consent to a divorce, or to threats to the defendant's solicitor with political injury upon his refusal to withdraw from the case.

5. A person who attempts to do the things above stated is in contempt, although he was not an attorney and did not know the legal effect of his act; but such ignorance is a mitigating circumstance.

On proceedings to punish for contempt. On order to show cause.

*Mr. Nelson B. Gaskill,* for the order.

*Messrs. King & Vogt,* for the respondent.

LANE, V. C.

This is a proceeding instituted, at the request of the court, to punish respondent, William Bowers, for contempt, in that he did commit acts which tended to obstruct, interrupt, prevent and embarrass the proper administration of justice.

A divorce suit was pending in this court brought by one Edmund H. Bowers, petitioner, against Mabel B. Bowers, defendant. The respondent is the father of the petitioner. The acts alleged to be contemptuous were two in number—first, on or

about December 17th, 1917, the respondent called at the office of the solicitor of Mabel B. Bowers and threatened the said solicitor that unless he should cease his opposition to the efforts of the petitioner to obtain a divorce from the defendant, Mabel B. Bowers, or withdraw from the then pending divorce action he, William Bowers, would bring political and other pressure to bear upon the said solicitor to compel him to sever his connection with the case. The divorce action was based upon the ground of desertion. There had been an answer filed denying the desertion and charging constructive desertion. At the time the threat was made the solicitor was a candidate for reappointment as attorney and counsel for the town of Boonton, and the respondent, Bowers, either had, or thought he had, through his acquaintance with those who had, some political influence. Second, on January 11th, 1918, the respondent wrote to the defendant in the divorce action a letter containing the following language:

"I wish now to request you to allow Ed his divorce (on grounds of desertion *only*) *no alimony, no lawyer's fees,* and no defence to be put in by you whatever. These present impossible conditions must be changed at once, for good. These two dear children must be cared for properly and immediately. We have Marguerite here, and have arranged for her to start in school Monday A. M. Ed will have Edrew, and with Mrs. Barker's and our help, he will have the best of care. These arrangements will permit you to live your own life in your own way. There is no reason why Ed cannot take them to N. Y. to stay with you over a Sunday occasionally as you may desire, in the same manner as you allowed them to come here. Finally, I assure you that nothing will be said by any of us concerning the reasons of your living apart. When they are old enough to realize—*incompatability* will answer all questions. Kindly reply promptly, and greatly oblige."

The matter was referred by the chancellor by formal order of reference to me as vice-chancellor. The respondent appeared and was examined. He admitted the writing of the letter; admitted the visit to the office of the solicitor but denied that the conversation was as related by the solicitor. I find against him on the issue of fact.

The law of this state provides that no divorce shall be obtained by collusion; the very jurisdiction of the court depends in part

upon there being annexed to the petition an affidavit of non-collusion. The extent to which this court has gone in endeavoring to prevent a divorce being obtained by collusion is well illustrated by the case of *Sheehan* v. *Sheehan, 77 N. J. Eq. 411.* The attempt of the respondent to induce the wife to consent to a decree which, as in this case, might have the effect of fraudulently imposing upon the court, is a clear contempt.

The act of the respondent in threatening the solicitor for the defendant in order to compel him to withdraw from the case is a clear contempt. It tends to deprive the court of the services of one of its officers. It was intended also in this case as a step in deceiving the court, to the end that a collusive divorce might be granted. The chancellor (*In re Merrill, 88 N. J. Eq. 261; 102 Atl. Rep.,* at *p. 402*) said: "It is a contempt of the dignity of the court for one of the litigants before it to denounce and abuse to the judge the lawyers representing the adversary party, because lawyers are officers of the court."

The statute (*P. L. 1917 p. 71*) which provides that no power of any court to punish for contempt shall be construed to extend to any case except the misbehavior of any person in its actual presence, the misbehavior of any officer of court in his official transactions, and the disobedience or resistance by any officer or other person to any lawful writ, process, order, rule, decree or command of the court, is unconstitutional, in so far as it may be claimed to apply to the court of chancery. The chancellor doubted (*In re Merrill, 88 N. J. Eq. 261; 102 Atl. Rep.,* at *p. 408*) whether it applied to the prerogative court. That it does not apply to chancery is too clear for argument. *Flanigan* v. *Guggenheim Smelting Co., 63 N. J. Law 647;* see also, *In re Thompson, 85 N. J. Eq. 221, 236.*

The act providing for punishment for contempt for disobedience of orders of the court of chancery (*1 Comp. Stat. p. 442*), does not apply to the class of contempt now under discussion. See *Frank* v. *Herold, 64 N. J. Eq. 371.*

The respondent upon the hearing denied any intent to contemn the authority of the court; stated that he did not realize that his acts were contemptuous and apologized to the court.

He must at least be held to have known that his act in threatening the solicitor was, whether it constituted a contempt or not, a wrong. He deliberately and without respect to the rights of the parties endeavored to secure that which he desired by every means within his power, legal or illegal. The head-note of *Seastream* v. *New Jersey Exhibition Co.*, opinion by Vice-Chancellor Pitney, *61 Atl. Rep. 1045*, expresses the law, as I understand it, as follows:

"The fact that one accused of contempt in attempting to improperly influence the administration of justice was not an attorney, and was therefore possibly ignorant of the legal effect of his acts, did not excuse him or purge him of the charge of contempt, although it was a mitigating circumstance to be considered in determining the degree of his culpability."

I have consulted with the chancellor as to the punishment to be inflicted, and, after taking into consideration all of the circumstances of the case, including the disavowal on the part of the respondent to contemn the court and his apology to the court, and the fact that the case is novel, at least in the sense of publicity and trial, we have concluded that in this instance there will be inflicted only a penalty of $50 and the costs of the prosecution. The extent of the punishment in this case is not to be considered in anywise as a precedent should a case of similar nature come before the court.

I adjudge the respondent guilty of contempt upon both counts and impose upon him a penalty of $50 and costs of this prosecution. Let him be committed to the common jail of the county of Morris until the penalty and costs are paid.