## LILLIAN A. SWANSON, PLAINTIFF, v. ERIC NORMAN SWANSON, DEFENDANT.

*Re*: Contempt of Lillian A. Swanson and John DeDiminicantonio.

Argued October 22, 1951—Decided November 19, 1951.

*Mr. Henry F. Schenk,* Deputy Attorney-General, argued the cause for *Mr. Theodore D. Parsons,* Attorney-General, the prosecutor-petitioner.

*Mr. Marvin A. Stern* argued the cause for the appellant John DeDiminicantonio and the respondent Lillian A. Swanson; *Mr. Joseph Persky* on the brief.

The opinion of the court was delivered by

OLIPHANT, J. This is an appeal by the prosecuting-petitioner from a judgment of the Appellate Division setting aside the conviction of Lillian A. Swanson for criminal contempt upon the ground that the court was without jurisdiction over her person. The Appellate Division, 10 *N. J. Super.* 513 (1950), did not adjudicate the guilt or innocence of Lillian A. Swanson on the merits of the case but remitted the record to the Superior Court, Chancery Division, to be proceeded with in accordance with the rules and practice relating to that court and consistent with the opinion of the Appellate Division. The Attorney-General applied for certification of this judgment, which was granted.

In the same judgment the Appellate Division on appeal reviewed the conviction of John DeDiminicantonio (hereafter referred to as John De) and found from the facts proven that John De was guilty of making false, untrue and perjurious statements under oath before the Superior Court and adjudged him guilty of contempt of the court, criminal in nature, and further ordered that he be committed to the common jail of Passaic County for a period of 30 days and ordering that a warrant issue forthwith directed to the sheriff of Passaic County. The defendant John De appealed the Appellate Division judgment to this court.

In view of the technical jurisdictional questions involved it is necessary to state the chronology of this cause with some exactness, particularly with reference to the Swanson appeal.

Lillian Anna Swanson, on September 2, 1949, filed a complaint for divorce on the ground of desertion, alleging that she was a resident of the Township of Haskell, Morris County, in this State and that she was a *bona fide* resident of the State of New Jersey at the time and ever since the cause of action arose and for more than two years next preceding the commencement of the said cause of action. Such allegations are necessary jurisdictional elements of an alleged cause of action for desertion. *R. S.* 2:50–10.

On November 21, 1950, an amended complaint was filed similar to the original complaint, except to add thereto that the desertion by her husband was willful, continued and obstinate for more than two years past, *R. S.* 2:50–3, which allegation was not in the original complaint. Both complaints were apparently verified by the statutory affidavits of non-collusion and inquiry. *R. S.* 2:50–8, 12; *Rule* 3:85–2. On the basis of the affidavit of inquiry an order of publication was entered and the cause approved for trial under *Rule* 3:85–3, 4.

No answer having been filed on behalf of the husband, the case came on for trial as an uncontested suit before Advisory Master Hegarty on December 22, 1949. At this hearing Mrs. Swanson testified that she lived at 1394 Ringwood Avenue, Haskell, New Jersey, and that she had lived there with her husband from June 15, 1946, but that he had deserted her on January 30, 1947. She testified her two children lived with her and attended school in Haskell, but when the court asked her the name of the school she did not know it, and John De called across the court room that the name of the school was "St. Francis School." The court's suspicions were aroused and at the close of the case he took it under advisement.

An immediate investigation was made by the court which culminated on March 14, 1950, when the court on its own motion appointed Louis Santorf, Esq., to prosecute proceedings in criminal contempt against Lillian Anna Swanson and the witnesses John De and Eleanor Algozina.

On March 15, 1950, Mr. Santorf filed a sworn petition in contempt which charged in detail that testimony given at the trial by the appellant Swanson and her witnesses was false and untrue and that the appellant did not reside in New Jersey on June 15, 1946, that she and her husband never lived at the address testified to, that the affidavits of non-collusion and inquiry were untrue and the jurats attached thereto had never been sworn to as required by law.

On March 15, 1950, the court issued, on this petition, an order to show cause why the named defendants should not be adjudged in contempt and ordered that a certified copy of the petition and order to show cause be served upon them either personally or by registered mail. The return day of this order to show cause was fixed as March 28, 1950. Personal service was effected upon the appellant at her residence in the Bronx, New York, and upon John De in Haskell, New Jersey.

On the return day both appeared in court and by counsel immediately entered several objections to the jurisdiction of the court, attacking the legal sufficiency of the petition and order to show cause, the power and authority of the advisory master to advise the order and to hear the proceedings in contempt, and challenged the effectiveness of the service upon the appellant Swanson in New York outside the jurisdiction of the court. In short, these challenges were directed to the jurisdiction of the court both over the subject matter and the person.

The prosecutor then moved to vacate the order to show cause as to Swanson on the ground that it had been served out of the State and asked that a writ of attachment issue forthwith and notice be given her in open court of the charges and that she be held under bond. The court denied both appellant's motions and that of the prosecutor to vacate the service, and requested that she plead to the charges. A motion for a continuance by Swanson was denied, a severance was granted to the defendant John De, and the trial proceeded as to Swanson.

The case was not completed on March 28, 1950, and was continued over to April 25, 26, 1950, when it was completed.

During this interval the respondent Swanson was entitled to appeal from the interlocutory order denying her challenges to the jurisdiction of the subject matter and the person. Rule 4:2-2(a) (3). She had 30 days to take such appeal, Rule 4:2-5 and 1:2-5(g), which she failed to do. Instead, on April 11, 1950, she filed a complaint in lieu of a preroga-

tive writ with the Law Division, Superior Court, praying for a writ of prohibition and an order to show cause with *ad interim* restraint directed to and against "Hon. William A. Hegarty, Advisory Master of the Chancery Division of the Superior Court of New Jersey." (L–4188–49). In this complaint the respondent reiterated each and every ground of objection to the jurisdiction previously made to the advisory master and overruled by him in the trial of the cause.

The Law Division judge to whom the application was made signed an order to show cause including an *ad interim* restraint, effective until April 20, 1950, restraining the proceedings against both the defendants, which was modified on April 11, 1950, so as to apply only to the proceedings against Swanson. The prosecutor, Mr. Santorf, and counsel for the appellants both countered with motions for a summary judgment and on April 20, 1950, the Law Division judge entered a summary judgment dismissing the complaint of the appellant and dissolving the *ad interim* restraint.

The respondent here immediately filed a notice of appeal to the Appellate Division from this judgment. This appeal was not perfected and was dismissed by a stipulation of dismissal dated April 27, 1950, and filed May 2, 1950 (A–454–49). *Rule* 1:4–5.

On April 25, and April 26, 1950, the trial of the defendants Swanson and John De for contempt was continued and concluded. Counsel for the defendants took part in the trials and cross-examined witnesses produced by the prosecutor, although neither of the defendants took the stand. The advisory master found both guilty of contempt and sentenced Swanson to jail for 60 days and John De for 30 days.

On April 26, 1950, the convictions were appealed to the Appellate Division, appeals were perfected and argued October 2, 1950, and decided on November 2, 1950, as set forth in the first paragraph of this opinion. On November 13, 1950, the defendant-appellant John De filed a notice of appeal to this court after serving it on the prosecutor, Mr. Santorf, on November 10, 1950. In his notice of appeal

John De stated he was appealing from a final judgment of the Appellate Division entered against him on November 2, 1950.

On November 30, 1950, the Chief Justice, as the administrative head of all the courts, and the Superior Court specifically, *Article VI, section VII, paragraph 1, of the Constitution,* by order appointed the Attorney-General, Honorable Theodore D. Parsons, in place and stead of Louis A. Santorf, Esquire, and designated the Attorney-General as the "Prosecuting-petitioner in this matter, to respond to the said appeal and take such other steps in the cause as may be necessary and proper." *Rule* 3:80–2(c).

The Attorney-General immediately served notice of an application for certification of the judgment entered in the Appellate Division as to the respondent Swanson, on the assumption that the Appellate Division had entered its judgment on November 2, 1950, as stated in John De's notice of appeal. Certification was granted on December 4, 1950. The Appellate Division had held the usual mandate issued in the cause ten days after the opinion for the purpose of entering a mandate in special form which it did on December 5, 1950.

The respondent Swanson filed a motion moving to vacate the order of certification before this court, alleging among other things that the Attorney-General had no right as the prosecuting-petitioner to appeal to this court and further asserting that his application for certification was out of time under *Rule* 1:2–5(d).

As to the time elements, she is merely repeating the error counsel for John De made when filing the notice of appeal in which he confused the filing date of the opinion of the court with that of the judgment of the court. It is the judgment of the court which is appealed from and not the opinion; therefore it is obvious from the chronology that the notice of appeal of John De and the application for certification by the Attorney-General were premature rather than tardy, and we shall consider them as having been filed within time.

■ As to the argument that there is no provision in the rules permitting the Attorney-General as the prosecuting-petitioner to appeal from a judgment of the Appellate Division in a matter of contempt, this is completely disposed of by the provisions in *Rule* 1:2–3 which provides:

"The Attorney-General or any County Prosecutor, as the case may be, on behalf of the State shall have the same right to an appeal to this court from any final judgment rendered in the Appellate Division as is accorded to a defendant."

This rule as drafted is substantially in the same form as *R. S.* 2:195–6, and this section runs back through the *Revision of* 1877 to the *Laws of* 1799 where it appeared in the Writ of Error Act. It has been interpreted that it was intended to apply to all types of cases civil and criminal. *Hines v. State*, 54 *N. J. L.* 199 (*E. & A.* 1891) ; *State v. Meyer*, 65 *N. J. L.* 233 (*E. & A.* 1900).

We have no hesitancy whatever in placing the same construction upon the rule, since it was intended and does apply to all types of cases both civil and criminal where the Attorney-General or the county prosecutor is a party. The motion to vacate the order of certification is therefore denied.

The nub of the argument on the appeal of the Swanson conviction is whether she waived her objection to the jurisdiction of the person, which objection was grounded on the personal service of the order to show cause on her in New York City outside the jurisdiction of this court. This will also involve a determination whether the objection was well taken.

The Appellate Division held that a criminal contempt proceeding is one *in personam* in which the court can acquire jurisdiction over the accused only by service of process or notice within the State or by the voluntary appearance of the accused.

The Attorney-General contends that Mrs. Swanson came into the State voluntarily in response to the order to show cause, and since a criminal contempt *facie curiae* was in-

volved no notice was required except that given in the court
on the return day, and he argues that she was not immune
from the service of this notice since she appeared voluntarily
and that the exemption from service while attending or going
to and from a trial of an action is not applicable in a case
of criminal contempt. The Attorney-General relies upon
the case of *Lamb v. Schmitt*, 285 *U. S.* 222, 76 *L. Ed.* 720,
52 *Sup. Ct.* 317 (1932). There the court held that the rule
that suitors, witnesses and their attorneys while in attendance
in connection with the conduct of one suit are immune from
the service in another, is founded not upon the convenience
of the individual but of the court itself, and is founded upon
the ground that due administration of justice requires that
a court will not permit interference with the progress of a
cause pending before it by the service of process in other
suits, which would prevent, or the fear of which might tend
to discourage, the voluntary attendance of those whose pres-
ence is necessary or convenient to the judicial administration
in pending litigation. It further said the privilege is a
privilege of the court and not one of the person and it should
not be enlarged beyond the reason upon which it is founded
and that it should be extended or withheld only as judicial
necessities require. The court said it has never doubted that
witnesses, parties and their counsel are amenable to the
process or order of the court for contempt of court committed
while in attendance on trial, or that any of them while there
are subject to process and orders of the court to compel the
production of documents or testimony in the case; nor can
it be doubted that the petitioner, notwithstanding his pres-
ence as an attorney and officer of the court, in the conduct of
the principal cause, was not immune from the service of pro-
cess in a summary proceeding to compel restoration of the
subject matter of the suit wrongfully removed from the
custody of the court. The deterrent effect, if any, upon the
attending at the trial of the possibility that these procedures
may be resorted to is outweighed by the fact that immunity,
if allowed, might paralyze the arm of the court and defeat the

ends of justice in the very cause for the protection of which the immunity is invoked.

Clearly this case holds the immunity rule does not apply to the service of process on non-residents in contempt proceedings, but the case does not go so far as to intimate that the process in criminal contempt proceedings can be served outside of the jurisdiction of the court hearing the main cause. In *Lamb v. Schmitt, supra,* the process was served upon the defendant while he was in attendance at court, which is a different situation than here.

A careful examination of the New Jersey cases enunciating the rule of immunity from service indicates that the rule stated in *Lamb v. Schmitt, supra,* is applicable here. In *Halsey v. Stewart,* 4 *N. J. L.* 366 (*Sup. Ct.* 1817); *Jones v. Knauss,* 31 *N. J. Eq.* 211 (*Ch.* 1879); *Mulhearn v. Press Publishing Co.,* 53 *N. J. L.* 154 (*Sup. Ct.* 1890); *Richardson v. Smith,* 74 *N. J. L.* 111 (*Sup. Ct.* 1906); *Michaelson v. Goldfarb,* 94 *N. J. L.* 353 (*Sup. Ct.* 1920); *Prescott v. Prescott,* 95 *N. J. Eq.* 173 (*Ch.* 1923), service was attempted to be made upon witnesses or parties attending court in actions instituted or about to be instituted in a court other than the one in which the witnesses or parties were in attendance. On the other hand in *Murray v. Elston,* 23 *N. J. Eq.* 212 (*Ch.* 1872), the court properly held that a witness who had responded to a subpoena from out of the State was liable and could be served with a subpoena *duces tecum* to produce documents evidential in the cause being heard. See also *Norris v. Hassler,* 23 *Fed.* 581 (1885).

It has likewise been held in *Leman v. Krentler-Arnold Hinge Last Co.,* 284 *U. S.* 448, 76 *L. Ed.* 389, 52 *Sup. Ct.* 238 (1932) that process in a civil contempt may be served out of the state where the party having submitted to the jurisdiction has left the state. The court quoted Mr. Justice Holmes' statement in *Michigan Trust Co. v. Ferry,* 228 *U. S.* 346, 353, 57 *L. Ed.* 867, 33 *Sup. Ct.* 550 (1913) and said: "where there is 'service at the beginning of a cause, or if the party submits to the jurisdiction in whatever form may be

required, we dispense with the necessity of maintaining the physical power, and attribute the same force to the judgment or decree whether the party remain within the jurisdiction or not. This is one of the decencies of civilization that no one would dispute.' "

There the court held that an effective decree of civil contempt could be entered even though the violation of the injunction occurred outside of the jurisdiction and the notice of the proceeding in contempt was served outside the jurisdiction. The court was careful to point out, however, the distinction between a civil contempt which may have some elements of criminality or obstruction of justice which is an action between the parties, and a criminal contempt to vindicate the authority of the court with the public on one side and the defendants on the other. The distinction which the court makes is set out with particularity in *Gompers v. Buck's Stove & Range Co.*, 221 *U. S.* 418, 55 *L. Ed.* 797, 31 *Sup. Ct.* 492 (1911), and in the New Jersey case of *Staley v. South Jersey Realty Co.*, 83 *N. J. Eq.* 300 (*E. & A.* 1914). This distinction is basic on the question of service and is not affected or enlarged by the mere fact that the proceedings happened to be entitled in the main cause. See *Leman v. Krentler-Arnold Hinge Last Co., supra; Worden v. Searls,* 121 *U. S.* 14, 30 *L. Ed.* 853, 7 *Sup. Ct.* 814 (1887); *Gompers v. Buck's Stove & Range Co., supra, page* 446.

█ The determinative factor is not the title of the proceeding but the nature of the charge to be answered. Clearly the petition and order to show cause in this case set forth a charge that is criminal in nature and an offense against the State, and as such in order to obtain effective jurisdiction of the person of the defendant the process had to be served upon her within the confines of this State, and the mere fact that the proceeding was entitled in the main divorce cause, as required by *Rule* 3:80–2, does not enlarge the effectiveness of the order to show cause outside the jurisdiction so as to bring it within the rule as stated in *Leman v. Krentler-Arnold, etc., supra.*

■ As to the question of waiver, the respondent appeared voluntarily on the return day of the order to show cause and promptly, through counsel, stated her objections to the jurisdiction of the person and subject matter of the contempt proceeding. Having made these objections promptly she did not waive them by contesting the contempt proceedings on the merits. Her right to raise these questions of jurisdiction on appeal is protected by *Rules* 3:12–2 and 3:12–8. These rules are based upon *Federal Rule* 12 (*b*) and (*h*) which have been practically adopted verbatim by us, and the federal rule has been uniformly construed to mean that objections to the jurisdiction of the person and subject matter are not waived by a general appearance on the merits. Our *Rule* 3:12–2 expressly provides that "special appearances are superseded." But there is this important and fundamental distinction between the federal practice and our practice, that there is no provision in the federal statutes or rules for an interlocutory appeal to test the jurisdiction of the person and subject matter, whereas our rules provide for such an appeal. *Rules* 4:2–2(*a*) (3); 4:2–5; 1:2–5.

We leave the question open as to whether a party who takes an interlocutory appeal under these rules and then abandons it, waives his objection to the *jurisdiction of the person* by making a general appearance on the merits.

The Attorney-General contends that the respondent has waived her objection to the jurisdiction of the person because she abandoned her appeal from the Law Division's dismissal of her complaint in lieu of a prerogative writ and asked for a writ of prohibition based upon her objections to the jurisdiction of the subject matter and the person.

■■ While a writ of prohibition was known in our practice it was used infrequently under the old Constitution by the former Supreme Court because similar relief could be obtained by the writs of *certiorari* and *mandamus*. *Carrick v. First Criminal Court, etc.,* 126 *N. J. L.* 598 (*Sup. Ct.* 1941). But the writ did exist and therefore the Superior Court has the power to issue its modern equivalent in a pro-

ceeding in lieu of prerogative writ in proper cases, pursuant to the transfer of powers and jurisdiction contained in *Article XI, section IV, paragraph* 3; *Article VI, section III, paragraphs* 2 and 3, as supplemented by *Rule* 3 :40–2. But the writ issued out of the Supreme Court only to an inferior court; it was never used to restrain a proceeding within the same court or a court of equal though different jurisdiction. Therefore, the writ is not available in the Superior Court as against another division of the court or a judge of that court. *Carrick v. First Criminal, etc., supra.*

It is quite probable that counsel for the respondent, Swanson, realized this after they had taken her appeal, and rather than risk an affirmance of the dismissal of her complaint in lieu of prerogative writ on the ground that the Law Division of the Superior Court was without jurisdiction, they abandoned her appeal in order to preserve her right to a future appeal on the question of the jurisdiction of the person. In view of the complexities of the law on the writ of prohibition and the newness of the practice we conclude that the abandonment of the appeal in that cause did not amount to a waiver of her right to enter a general appearance in the contempt proceeding and appeal from the final judgment therein, if adverse, on the ground that there was no jurisdiction of the person. Therefore the judgment of the Appellate Division as to the respondent Swanson must be affirmed.

The appellant John De raises no question as to the jurisdiction of his person since admittedly he was served with the order to show cause within the jurisdiction. He challenges the power of the advisory master to sit and hear a criminal contempt *facie curiae* arising out of a divorce proceeding. The contention is that neither the Constitution nor the new rules specifically refer to the advisory master having such power. This argument is a mere play on words and it is without constitutional or legal basis. It has been definitely held that an advisory master in the Court of Chancery had the power to sit in matters of criminal contempt and that the

power is expressly found in the Court of Chancery *Rule* 128 (*e*). *In re Caruba,* 139 *N. J. Eq.* 404 (*Ch.* 1947), affirmed 140 *N. J. Eq.* 563 (*E. & A.* 1947).

The power and jurisdiction of the Court of Chancery and its judges and officers was vested in the Superior Court by *Article VI, section III,* and was transferred thereto by *Article XI, section IV, paragraph* 3, and the continuation of the advisory masters to hear matrimonial proceedings is provided for in *Article XI, section IV, paragraph* 6. *Rules* 3:82 and 3:87–4(*a*) and (*b*) require matrimonial matters to be heard by a judge of the Chancery Division or by an advisory master assigned thereto. This is consonant with the constitutional provision. *Rule* 3:40–2 provides: "All actions which were on September 14, 1948, maintainable in the Court of Chancery or before the Chancellor * * * shall be brought in the Chancery Division." This rule is complementary to the constitutional provisions and transfers all inherent and statutory jurisdiction of the former Court of Chancery to the Superior Court, Chancery Division, which may not have been mentioned specifically in the Constitution. There can be no question that the advisory master has the power to hear a cause in criminal contempt arising out of a matrimonial action as defined in *Rule* 3:82. See *Zimmerman v. Zimmerman,* 12 *N. J. Super.* 61 (*App. Div.* 1950) and see also *Rule* 3:87–8.

 The next point of the appellant is that the second count of the petition is defective in that it fails to set forth a charge of criminal contempt. It is difficult to conceive how the charge could be set forth more specifically than it is in the petition, which states with precision that the appellant's testimony as to the residence of Lillian Swanson in the State of New Jersey was untrue in fact and that she did not during any of the periods mentioned reside in the State of New Jersey; and it is clearly specific as to the other false statements allegedly made by him.

The appellant then argues that at common law the courts did not punish false testimony for criminal contempt unless

the court had judicial knowledge of the falsity of such testimony. The principal points made under this argument were answered adversely in *In re Caruba, supra,* where it was held that perjury or false swearing is a contempt of court and may be punished, notwithstanding an indictment for perjury as a crime will also lie, and that false swearing on which a charge of contempt is based need not be sufficient to constitute perjury, and that a party to an action is held to a stricter accountability for contempt than a stranger. As to the point the court must personally have judicial knowledge of the falsity of such testimony at the time of the trial, such knowledge only determines the method of procedure.

In a contempt *in facie curiae* it has been held that no notice to the offender is necessary, he being present before proceeding to punish him. *Ex parte Bradley, 7 Wall.* 364, 19 *L. Ed.* 214 (1868).

However, where the contempt is *in facie curiae* but the proof of the contempt depends on proof from persons other than the judge himself, then the better practice is that the proceeding should be instituted by an order to show cause. *In re Savin,* 131 *U. S.* 267, 33 *L. Ed.* 150, 9 *Sup. Ct.* 699 (1889); *Cooke v. United States,* 267 *U. S.* 517, 69 *L. Ed.* 767, 45 *Sup. Ct.* 390 (1925). And this distinction is maintained in *Rules* 3:80–1; 3:80–2.

The next contention of the appellant John De is that the false swearing did not obstruct the administration of justice and therefore does not constitute a criminal contempt. The holding ·in *In re Caruba, supra,* definitely disposes of this contention. But the appellant further argues that the course of justice was not obstructed because the divorce case was dismissed by the advisory master. The divorce proceeding of Lillian A. Swanson was not dismissed on December 22, 1949, but on May 25, 1950 (Docket M–21–49). The court had doubts as to the truth of the testimony, but took the case under advisement because the testimony as to residence was uncontradicted on the record. It was not until the pro-

ceeding in contempt was completed on April 26, 1950, that it was demonstrated that such testimony was false in fact.

The record in this case is ample evidence that the course of justice was obstructed and will be obstructed to the detriment of the citizens of this State and other non-residents who have the right to appear before our courts, if non-residents are permitted and encouraged to attempt to avail themselves of the jurisdiction of this court by false testimony as to the jurisdictional elements. The assertion that such conduct does not amount to an obstruction of justice is preposterous to the last degree.

The appellant next contends that the power and jurisdiction of the Superior Court to hold a person in contempt is limited and confined to the situation set out in *R. S.* 2:15-1 and the actions of the appellant John De cannot be held to be contempt within the language as used in this section. A short and direct answer to such a contention is that false testimony in the presence of the court as to a jurisdictional element certainly falls within *R. S.* 2:15-1 which defines contempt as "a. Misbehavior of any person in the actual presence of the court." Therefore it is unnecessary to discuss any possible constitutional limitations of *R. S.* 2:15-1, if such there be, on the inherent power of any constitutional court of record to institute a proceeding in criminal contempt.

The appellant then urges that the proceedings are illegal as they were entitled and prosecuted in the divorce suit. The proceedings were entitled as required by *Rule* 3:80-2 and the requirements of this rule relate to the procedure and not to the substance and cannot be a ground for a dismissal of the cause for the reasons stated above on the appeal of Swanson.

The argument by the appellant as to the lack of due process is equally pointless. He had ample notice and ample time to prepare for trial.

The appellant's final argument is that the evidence is insufficient to establish his guilt, the contention being that he cannot be convicted on his uncorroborated confession alone, and further, perjury must be proven by at least two witnesses

and that the statute on false swearing is not applicable to this situation. Such arguments were answered in *In re Caruba, supra,* where the court pointed out that perjury or false swearing is a contempt of court and may be proceeded against as such.

There was ample and direct evidence that the appellant had testified falsely as to the residence of Swanson, and since he did not take the stand there is a strong inference that he could not deny the charges. *State v. Callahan,* 76 *N. J. L.* 426 (*Sup. Ct.* 1908), affirmed 77 *N. J. L.* 685 (*E. & A.* 1909); *State v. Friedman,* 136 *N. J. L.* 527, 531 (*E. & A.* 1948); *State v. Brooks,* 136 *N. J. L.* 577, 581 (*E. & A.* 1948).

The judgment of the Appellate Division on appeal under *R. S.* 2:15-3 as to John De is affirmed; the judgment of the Appellate Division as to Lillian A. Swanson is affirmed, and the motion of Lillian A. Swanson to vacate and set aside the order of certification is denied.

This court has suggested to the Attorney-General, as prosecutor herein, that the files of the investigation of the alleged fraud of the defendant Swanson be examined by him and if he concludes that there is sufficient proof as to warrant an indictment for false swearing or perjury by Lillian A. Swanson that he have the matter presented to the Passaic County grand jury promptly so the grand jury will have an opportunity to act prior to the expiration of the statute of limitations on December 22, 1951.

*For affirmance*—Chief Justice VANDERBILT, and Justices CASE, OLIPHANT, WACHENFELD, BURLING and ACKERSON—6.

*For reversal*—None.

*For denial of motion*—Chief Justice VANDERBILT, and Justices CASE, OLIPHANT, WACHENFELD, BURLING and ACKERSON—6.

*Opposed*—None.