33 N.J. Super. 156 (1954)
109 A.2d 462
HAROLD G. MUELLER, PLAINTIFF-APPELLANT,
v.
DANIEL EUCENHAM, DEFENDANT-RESPONDENT, AND DANIEL EVERNHAM, JR., AN INFANT BY HIS GUARDIAN AD LITEM, DANIEL EVERNHAM, AND DORIS EVERNHAM, AN INFANT BY HER GUARDIAN AD LITEM DANIEL EVERNHAM, INTERVENING-COUNTERCLAIMANTS-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued September 20, 1954.
Decided November 12, 1954.
*158 Before Judges EASTWOOD, GOLDMANN and SCHETTINO.
Mr. Jerome S. Lieb argued the cause for appellant (Messrs. Harkavy & Lieb, attorneys; Mr. Abraham I. Harkavy and Mr. Lieb, of counsel).
Mr. Clarkson S. Fisher argued the cause for respondents (Messrs. Frankel & Frankel, attorneys; Mr. George A. Bariscillo, Jr., on the brief).
*159 The opinion of the court was delivered by GOLDMANN, J.A.D.
Plaintiff appeals from an order of the Monmouth County District Court (1) permitting defendant (wrongly designated in the original complaint as Eucenham) to counterclaim, and (2) permitting defendant's infant children, Daniel Evernham, Jr. and Doris Evernham, by their father as guardian ad litem, to intervene and file their claims against plaintiff.
The action grew out of a collision on April 10, 1953 involving plaintiff's and defendant's automobiles. Defendant's children were passengers in his car. Plaintiff was at that time insured against property loss under a collision policy issued by the Service Fire Insurance Company. The company paid him $656.40 for the damage to his car; plaintiff in return gave the company his "loan receipt" whereby it was subrogated to his rights against defendant for the recovery of the sum it had paid under the policy. By that receipt plaintiff agreed to present his claim to defendant promptly and, if necessary, commence and diligently prosecute an action against him in his own name. He also appointed the "managers and/or agents" of the company "his agent(s) and attorney(s)-in-fact," to collect the claim and to begin, prosecute, compromise or withdraw, in his name but at the company's expense, any and all legal proceedings it might deem necessary to enforce the claim, such proceedings to be under the exclusive control and direction of the company.
On November 20, 1953 the company's attorney filed a complaint in plaintiff's name in the Monmouth County District Court seeking judgment against defendant for the damage done to plaintiff's automobile. Defendant was served the next day and entered his appearance December 8, 1953. On or about December 30, 1953 plaintiff moved from New Jersey to Virginia where he is presently residing.
Daniel Evernham individually and as guardian ad litem of his two infant children then filed a complaint in the Monmouth County Court on January 18, 1954 seeking judgment for personal injuries and damage to his automobile, for injuries *160 suffered by the children, and for damages per quod. Plaintiff could not be served personally because of his removal from the State. Evernham then attempted to file a so-called "counterclaim" in the Monmouth County District Court action, on behalf of himself and the children. Actually, it was (1) a counterclaim for his own injuries and property damage, as well as for damages per quod by reason of the injuries to his children, and (2) a claim by the children as intervenors for personal injuries suffered because of plaintiff's alleged negligence. Evernham's counsel sent this "counterclaim" to plaintiff's then attorney who, on April 8, 1954, acknowledged service as of time and without objection. The district court action was thereupon, pursuant to R.R. 7:6-1(b), transferred to the Superior Court by a consent order entered by a Law Division judge. At this juncture of the proceedings substituted counsel for plaintiff prepared an order, to which defendant's attorney consented, dismissing the "counterclaim" without prejudice and without costs because plaintiff's original counsel "inadvertently" acknowledged service of that pleading. The consent order was entered May 6, 1954; it remanded the complaint to the Monmouth County District Court "for further procedure therein, in accordance with the rules and practice of that court."
Counsel for defendant then moved on notice for an order permitting the infants, appearing by their father as guardian ad litem, and defendant individually, "to intervene and counterclaim" against plaintiff in the original action, it being represented that their respective claims and the main action had a common question of law or fact. Attached thereto was a copy of the "counterclaim" proposed to be filed. The motion was contested, and after argument the district court judge entered the order of May 12, 1954 here on appeal, granting the relief sought.
The "counterclaim" filed pursuant to the May 12 order was in six counts seeking judgment as follows: (1) $50,000 for personal injuries suffered by defendant Evernham; (2) $1,000 for property damage to his automobile; (3) $25,000 for personal injuries suffered by his son, Daniel Evernham, *161 Jr.; (4) $5,000 for medical expenses and loss of earnings by the father; (5) $25,000 for personal injuries suffered by his daughter, Doris Evernham; and (6) $5,000 for medical expenses and loss of earnings by the father. Thus, the "counterclaim" consists of a counterclaim by Evernham individually seeking $61,000 total damages, and a claim by the intervening infants against plaintiff Mueller seeking $50,000 total damages.
The May 12 order of the Monmouth County District Court was interlocutory. R.R. 2:2-3(a) provides that an appeal may be taken to this court from an interlocutory order "(3) Determining that the court has jurisdiction over the subject matter or the person." In objecting to the entry of the order under appeal plaintiff strenuously urged that the district court had no jurisdiction over his person or the subject matter  the latter for the reason that the amount in controversy under the counterclaim and the intervening claims far exceeded the jurisdiction of the court. The present appeal clearly falls within the provision of the cited rule.

I
On this appeal plaintiff argues, as he did below, that the district court lacked jurisdiction over him in permitting the filing of the counterclaim and intervenors' claims. In opposing this contention respondents seek to draw some support from the fact that plaintiff's former attorney had "inadvertently" (as he put it) acknowledged the "counterclaim" as served within time. That acknowledgement is no longer in the picture; respondents, by their attorney, consented to its withdrawal and they cannot now rely upon it. We are not concerned with the reasons for that waiver. An attorney of record has implied authority to waive technical advantages and formalities necessary or incidental to the management of the suit and which affect only procedure, as distinguished from the cause of action itself. 5 Am. Jur., Attorneys at Law, § 91, p. 314.
*162 Plaintiff claims that he permitted his name to be used by the Service Fire Insurance Company for a limited purpose only in the institution of this suit, and this pursuant to the provisions of the loan receipt he had executed in its favor. He also argues that the insurance company which would be compelled to defend the counterclaim and the claims of the infant intervenors for personal injuries is an entirely different company from the one which began the district court suit to recover for property damage. Neither of these contentions is of moment. Solution of the jurisdictional problem must be sought at a more significant level. Our consideration of the question falls under two heads: defendant's counterclaim and the claims of the intervening infants.
Plaintiff having, by his voluntary act in demanding justice from defendant, submitted himself to the jurisdiction of the district court, there is nothing arbitrary or unreasonable in treating him as being there for all purposes for which justice to the defendant requires his presence. "It is the price which the state may exact as the condition of opening its courts to the plaintiff." Adam v. Saenger, 303 U.S. 59, 67-68, 58 S.Ct. 454, 82 L.Ed. 649 (1938), rehearing denied 303 U.S. 666, 58 S.Ct. 640, 82 L.Ed. 1123 (1938). See Freeman v. Bee Machine Co., Inc., 319 U.S. 448, 63 S.Ct. 1146, 87 L.Ed. 1509 (1943); and cf. Englander v. Jacoby, 132 N.J. Eq. 336, 340 (Ch. 1942), where it was said:
"* * * A party who appears in a cause submits himself to its jurisdiction in respect to those outreaches of the case which are reasonably to be anticipated."
This is certainly true of a defendant's counterclaim arising out of the same collision which forms the basis for plaintiff's action.
Plaintiff cites Swanson v. Swanson, 10 N.J. Super. 513 (App. Div. 1950), affirmed 8 N.J. 169 (1951), and Schuster v. Schuster, 9 N.J. Super. 11 (App. Div. 1950). Both cases are distinguishable. In Swanson the plaintiff wife instituted a divorce action against her husband, alleging she *163 was a resident of New Jersey. Following the taking of testimony, the court conducted an investigation as to the alleged residence, with the result that contempt proceedings were begun against plaintiff and two others. The petition and order to show cause in those proceedings were served upon her in New York State. Counsel for plaintiff unsuccessfully objected to the jurisdiction of the court to try the contempt. Plaintiff was convicted of contempt of court, and upon appeal this court reversed, holding:
"The circumstance that the appellant originally invoked the jurisdiction of the court in quest of a judgment of divorce does not in our judgment confer jurisdiction over her for the purposes of the adverse prosecution against her of the charge of criminal contempt." (10 N.J. Super. at pages 521-522)
And in affirming, the Supreme Court (8 N.J., at page 180) clearly indicated that the contempt proceedings were criminal in nature and an offense against the State, so that to obtain effective jurisdiction over Mrs. Swanson, process had to be served upon her within the confines of this State.
In Schuster plaintiff had instituted a divorce suit against her husband, who was personally served in New Jersey. He counterclaimed and subsequently moved to Florida. Plaintiff was given leave to file an amended complaint adding a separate cause of action for support and maintenance. The court held that such amended pleading could not be served upon the attorney for the nonresident defendant without violating the constitutional guarantee of procedural due process. It must be recognized that the defendant in Schuster was a party in invitum, and that is sufficient to distinguish the case. Parenthetically, it may be observed that the result of that case is difficult to understand in view of the fact that defendant had himself filed a counterclaim. See 8 Rutgers L. Rev. 273.
We have considered Whalen v. Young, 15 N.J. 321 (1954), as well as New York Life Insurance Co. v. Dunlevy, 241 U.S. 518, 36 S.Ct. 613, 60 L.Ed. 1140 (1916), and Ex parte Indiana Transportation Co., 244 U.S. 456, 37 S.Ct. *164 717, 61 L.Ed. 1253 (1917), and do not find that what was said in these cases runs contrary to our holding that the district court had jurisdiction over plaintiff for the purpose of defendant's counterclaim.
The claims of the intervening infants stand on a different footing. That part of the so-called "counterclaim" setting up these claims amounts, in effect, to an independent cause of action brought on their behalf by the father as guardian ad litem. Were these claims "outreaches of the case" which were "reasonably to be anticipated" by the now non-resident plaintiff? We do not think so. By suing defendant for property damage, plaintiff cannot be considered as having submitted himself to the jurisdiction of the court for any and every purpose. See Munday v. Vail, 34 N.J.L. 418, 422 (Sup. Ct. 1871). Had this collision involved three cars, it would not, in our view, have been proper in the circumstances of this case where plaintiff had left the jurisdiction after instituting his property damage action, to allow the owner of the third car to intervene and by independent action seek damages for personal injuries. The fact that the intervening claimants happen to be the defendant's children does not change the logic of the matter. Neither of the infant intervenors was a proper or necessary party to the original action, and plaintiff sought no relief against them. The "counterclaim" which the district court judge permitted to be filed could not be used as a means of introducing new parties seeking affirmative relief.
The intervention was, of course, permissive. It is not necessary, in view of our determination that the court did not have jurisdiction over the person of absent plaintiff in the circumstances, to determine whether the application for intervention was timely under R.R. 4:37-3, made applicable to the county district court by virtue of R.R. 5:2-1 and 7:1-3. Our further consideration of the appeal will therefore be limited to defendant's own counterclaim.

*165 II
As noted above, the four counts in the "counterclaim" which relate to defendant alone respectively demand judgment for his personal injuries, damage to his car, and damages per quod for medical expenses and loss of earnings of his two children. The per quod feature of his counterclaim is derivative. Defendant could recover such damages only if the infants were successful, for their claims are based upon plaintiff's negligence and the infants would have to prove that negligence and their own lack of contributory negligence. Accordingly, we need consider only the personal injury and property damage features of defendant's counterclaim.
R.R. 7:5-8 provides:
"All claims in the nature of recoupment, set-off, cross-action, or any other claim for relief except a complaint or a third party complaint, shall be asserted in an answer as a counterclaim, and not otherwise, and shall be served and filed within the time limited for answering."
R.R. 7:5-4 allows 20 days after service of summons and complaint for the filing of the answer. Plaintiff argues that R.R. 7:5-8 is mandatory, that the counterclaim should have been filed by December 11, 1953, and having been filed more than four months later is completely out of time. But there are other operative considerations. In the first place, defendant's claims are for an unliquidated amount; in the Superior Court, he would not be required to set them up by way of counterclaim under R.R. 4:13-1, Kelleher v. Lozzi, 7 N.J. 17 (1951), and such was also the rule in the district court under the old practice, Ehret v. Hering, 99 N.J.L. 73 (Sup. Ct. 1923). 17 N.J. Practice (Fulop, District and Municipal Courts), § 455, p. 236. Again, R.R. 7:1-2 provides that the rules governing county district courts "shall be construed to render the civil practice just, simple and uniform, and to prevent unjustifiable expense and delay," and where strict adherence to the rules would work injustice *166 or surprise, they may be relaxed or dispensed with by the court. Cf. R.R. 1:27A, formerly R.R. 1:1-8. There is the further consideration that R.R. 4:13-5, relating to omitted counterclaims, provides:
"When a pleader fails to set up a counterclaim through oversight, inadvertence, or excusable neglect, or when justice requires, he may by leave of court set up the counterclaim by amendment."
This power is conferred upon the County Courts by virtue of R.R. 5:2-1, and R.R. 7:1-3 provides that the practice and procedure in the county district courts "shall conform as nearly as may be to that in the law division of the county court, except where there is an express provision in the law or these rules to the contrary." Taking all these factors into consideration, the county district court could, in its discretion, permit defendant to file his counterclaim.
But the argument is made that pretense of liberality cannot cloak the county district court with powers beyond its jurisdiction, and the court should not have permitted the filing of the counterclaim where defendant sought damages in excess of its jurisdictional limits.
Admittedly, the county district court is a purely statutory court. L. 1953, c. 297 amended N.J.S. 2A:6-34 to increase the jurisdiction of county district courts to $3,000, exclusive of costs, in actions for damages resulting from bodily injury or death or damage to property arising out of the ownership, maintenance or use of a motor vehicle. A counterclaim is, of course, considered an "action" in the county district court, Broad & Branford Place Corp. v. J.J. Hockenjos Co., 132 N.J.L. 229 (Sup. Ct. 1944). Had defendant promptly filed his counterclaim within the 20-day period, no objection to lack of jurisdiction over the subject matter could have been raised, even though the amount exceeded the jurisdictional limit.
R.R. 7:6-1 sets up the procedure for transferring an action to the Superior Court where a counterclaim is filed in excess of the jurisdiction of the county district court. The counterclaim is merely filed with the county district court; *167 the court is not called upon to act with respect thereto. The counterclaimant then moves in the Superior Court for a transfer of the cause to that court, and the Superior Court in its discretion permits the transfer to be made.
We cannot say that the county district court abused its discretion in permitting defendant to file his own counterclaim, even though the demand for judgment exceeded the jurisdiction of that court. The court apparently considered that under R.R. 4:13-5 justice required that defendant be allowed to file a counterclaim, realizing that he would next move for a transfer of the entire cause to the Superior Court where the complaint and counterclaim could expeditiously be disposed of in one trial, the claims presenting common questions of law and fact. It would not appear that the trial will be unduly delayed by reason of such transfer.
The May 12, 1954 order of the county district court will therefore be modified in accordance with this opinion. The order is affirmed to the extent that it permitted defendant to set up his claims for personal injuries and property damage by way of counterclaim; it will be reversed insofar as it allowed the infants to intervene by their guardian ad litem and permitted defendant to counterclaim for damages per quod.