112 N.J. Super. 534 (1970)
271 A.2d 916
IN THE MATTER OF JEROME A. FINKELSTEIN CHARGED WITH CONTEMPT OF COURT.
Superior Court of New Jersey, Chancery Division.
Decided December 18, 1970.
*536 Mr. Gerald A. Liloia for the Court (Messrs. Riker, Danzig, Scherer and Brown, attorneys).
Mr. Robert L. Doris, Jr. (Essex County Legal Services Corporation) argued the cause for defendant.
CONSODINE, J.C.C. (temporarily assigned)
Deposition of one suspect of concealment of defendant's assets was taken for use on a motion. Defendant participated. His attorney did not attend. His participation demonstrated a clear intent to make a shambles of the proceeding. He climaxed interruptions, advices to the witness, remarks to counsel with the epithet to the attorney more redolent of another and far younger generation than his, "It takes a pig to represent a pig."
His conduct was a direct interference with the orderly administration of justice. Discovery is a pillar of the procedural edifice. Chief Justice Vanderbilt, speaking to this point in Lang v. Morgan's Home Equipment Corp., 6 N.J. 333 (1951), stated:
Liberal procedures for discovery in preparation for trial are essential to any modern judicial system in which the search for truth in aid of justice is paramount and in which concealment and surprise are not to be tolerated. * * * [at 338]
Discovery has ancient roots. Its antecedents are in Roman law where actions interrogatorial and actions ad exhibendum compelled a defendant to make answer under oath to questions or to produce some specific thing. Phillimore, Private Law among the Romans, 182. The procedural and remedial machinery necessary to the extraordinary jurisdiction, exercised at first only permissively by the Chancellors of England, *537 developed over centuries into a Court of Chancery in the 14th Century. During all these centuries "there was always jurisdiction to give discovery." Whitfield v. Fausett, 1 Ves. Sen. 387, 392 (1750).
Generally, see: 1 Pomeroy, Equity Jurisprudence (5th ed. 1941) 275-336, 392-409; Ashburner, Principles of Equity (2d ed. 1933), 9, 10, 29-34; Spence, Equitable Jurisdiction of the Court of Chancery (1846) 411-413, 676-680; 1 Pollock and Maitland, History of English Law (2d ed. 1899) bk. 2, c. 111.
Both under the older and the current practice, discovery is accomplished away from the courtroom and in the absence of a judicial officer. Ordinarily, depositions are taken before a person authorized to administer oaths, usually a certified shorthand reporter. R. 4:12-1. The proceeding is not a public trial. Re Western of Canada Lands & Works Company, L.R. 6 Ch. Div. 109. It is ministerial in function but necessarily adjuctive to judicial process.
New York's counterpart of the deposition practice is examination before trial. A litigant who interfered with such an examination by referring to a witness as "a god damned liar" was held to be in criminal contempt. That the words were spoken in the heat of anger was no excuse. Sewards v. Rubin, 204 Misc. 172, 125 N.Y.S.2d 776 (Sup. Ct. 1953).
It would appear that our courts have the same recourse. N.J.S.A. 2A:10-1 to 7, defining the power of courts to punish for contempt, lists three grounds, none of which fits this case. However, the statute by its words does not affect the inherent power of the Superior Court to punish for contempt. N.J.S.A. 2A:10-1; In re Caruba, 139 N.J. Eq. 404 (Ch. 1947).
I have searched without success for cases other than Seward v. Rubin, supra, or text reference concerning contempt citation for opprobrious conduct by parties (or anyone else) at a deposition hearing. However, dearth of precedent has never been a deterrent to action on new combinations of facts.
*538 * * * New combinations of facts are constantly arising and producing new questions of law; the determination of each of these may be considered a new law, for it lays down a rule to be followed in time to come, and the reports of our Courts of Justice are far more voluminous than the statute book * * * [2 The Lives of The Chief Justices of England 297 (1873)]
And in Cancellieri v. De Modica, 57 N.J. Super. 598, (Law Div. 1959).
Although lack of precise precedent treating a particular fact situation as a criminal contempt would not prevent a court from adjudicating it to be such if it should determine that the act complained of tended to obstruct, hinder, or hamper justice in its due course (17 C.J.S. Contempt § 8, p. 11; State ex rel. Turner v. Albin, 118 Ohio [St.] 527, 161 N.E. 792 (Sup. Ct. 1928)), the absence of such precedent must give the court pause to make certain that it is not unwarrantedly expanding the area in which it should invoke such power. 17 C.J.S. Contempt § 8, p. 11. [at 604]
But the proposition involved has not been without pertinent comment.
"The Law considers it as a contempt of the authority of the Court to abuse and villify the person who is acting under it." Wilmot, Notes on King v. Almon, 270 (1765) as cited in Fox, The History of Contempt of Court, 215 (1927).
And modernly in our own State:
* * * the presentation of the truth to the court is paramount; it must proceed unimpeded and unhampered despite claims of prying, where, as here, there exists the means of affording adequate protection against unwarranted intrusion and invasion of the rights of one party by another party. [Bead Chain Manufacturing Co. v. Smith, 1 N.J. 118, 120-121 (1948)]
I doubt that citation of this defendant for his obstreperous misconduct at the deposition hearing is an unwarranted expansion of the criminal contempt area. To hold otherwise would certainly tend to hinder or hamper the administration of justice.
*539 The transcript demonstrates that defendant's misconduct was continuous and deliberate, was focused on impeding the course of justice, State v. Zarafu, 35 N.J. Super. 177, 180 (App. Div. 1955), and was pinpointed to the abuse of an officer of the court in an endeavor to obstruct the course of justice. In re Merrill, 88 N.J. Eq. 261, 266 (Prerog. 1917); In re Bowers, 89 N.J. Eq. 307, 309 (Ch. 1918). Defendant's conduct was clearly a criminal contempt of court, and I cite him therefor.
Under our case law the conduct of defendant might well be held to be in facie curiae. There was an order to take the deposition. There is a record of the proceeding that was made for, and used at, argument on a motion in the case. There was an admission in open court of the climactic remark.
However, the proof of the contempt, although it is in the transcript, could depend on testimony from those attending the taking of the deposition. The trial judge was not there present. Swanson v. Swanson, 8 N.J. 169, 184 (1951).
I believe it to be better practice on the facts herein to refer the trial of defendant for criminal contempt to another judge.
Let the petition and order to show cause why defendant should not be adjudged guilty of contempt of court, and the order appointing an attorney to prosecute under R. 1:10-2, be filed.