SAMUEL NUSSBAUM, COMPLAINANT–RESPONDENT, **v.** JOSEPH HETZER AND MARY HETZER, HIS WIFE, DEFENDANTS–APPELLANTS.

Argued November 8, 1948—Decided December 6, 1948.

See, also, 1 *N. J.* 25.

*Mr. Jack Rinzler* argued the cause for complainant-respondent (*Mr. Aubrey J. Elias,* solicitor).

*Mr. Albert S. Gross* argued the cause for the defendants-appellants (*Mr. Max Eisenstein* and *Mr. Gross,* solicitors).

The opinion of the court was delivered by

CASE, J. The appeal is from an order in Chancery, made July 26, 1948, determining that Joseph Hetzer and Mary Hetzer, his wife, had willfully disobeyed the provisions of a decree directing them to pay the sum of $10,000.00 to a special master and finding them guilty of contempt of the court in committing that act of willful disobedience. The order further directed that the defendants should each pay to the clerk

of the court a fine of Twenty-five Dollars for the use of the state, that they should pay the complainant his costs to be taxed, including a named counsel fee, and that they should "be committed to the common jail of the County of Bergen, there to be held until the further order of the Chanceller". It also provided that a warrant should issue directed "to the Sheriff of the County of Bergen commanding him to take the bodies of the said Joseph Hetzer and Mary Hetzer, his wife, and keep them in his custody in the common jail of said county until the further order" of the court.

█ Contempts are generally divided into two classes, public contempts and private or civil contempts. The former are primarily concerned with a violation of the rights of the public as represented by constituted legal tribunals, are, therefore, criminal in nature and are attended by a degree of formality and preciseness beyond the required procedure in private contempts, which are primarily for the vindication of private rights and only incidentally involve a vindication of public authority.

█ The fault decreed against the defendants is that they did not deposit the money which was in litigation, an act commanded plainly for the benefit of the complainant. The contempt was private or civil, and of the type of omissions, not of commissions. Since the contempt was civil the papers were properly entitled in the cause; and the procedure by order to show cause, supported by petition and affidavits, responded to by answer containing certain admissions, followed by argument, was in accordance with the recognized practice. The defendants were not foreclosed from any defense or explanation. On July 22nd, four days before the disputed order, defendants filed, presumably with the Clerk in Chancery, a paper bearing the title, according to the appendix, of "Motion to Amend Answer" and with this content:—

"If it be argued that impossibility of performance had not been set up, the defendants now respectfully move the court for permission to amend the answer in that respect and for an opportunity to support such affirmation by proof."

The filing of such a paper with the clerk was of itself insufficient to evoke a ruling. It does not appear that the court was even informed of the incident; and, had it been informed, the court was under no duty to act upon so contingent a request. We find no error in the procedure or in the adjudication of contempt.

■■ However, having in mind the character of the contempt, we think that the order does not sufficiently limit the imprisonment. The pertinent statute, which had its origin in section 53 of the Chancery·Act of 1799, *Paterson p.* 434, and has come down practically unchanged, is *R. S.* 2:15–7 and reads as follows:—

"Any person who shall be in contempt of the court of chancery according to the law, practice or course of that court, by reason of his disobedience to a rule, process or order of that court, shall, for every such contempt and before he be released or discharged therefrom, pay to the clerk in chancery, for the use of the state, a sum not exceeding fifty dollars, as a fine for his contempt; and he, being in court upon process of contempt or otherwise, shall stand committed and remain in close custody until the process, rule or order of the court of chancery is obeyed and performed, and until the fine imposed for his contempt, with costs, is fully paid."

It is clear that the purpose of the statute is to limit the imprisonment to the period of non-obedience. The rule is thus stated in *Staley v. South Jersey Realty Co.,* 83 *N. J. Eq.* 300 *(E. & A.* 1914):—

"In a civil contempt the proceeding is remedial; it is a step in the cause the object of which is to coerce one party for the benefit of the other party to do or to refrain from doing some act specified in the order of the court. Hence, if imprisonment be ordered it is remedial in purpose and coercive in character, and to that end must relate to something to be done by the defendant by the doing of which he may discharge himself. As quaintly expressed, the imprisoned man 'carries the keys to his prison in his own pocket.' *Re Nevitt,* 54 *C. C. A.* 622; 117 *Fed. Rep.* 451."

"The saying has it that he who is guilty of a civil contempt has the keys of his prison in his own pocket." *Markle v. Local Union No.* 641, 131 *N. J. Eq.* 202 *(E. & A.* 1941). Likewise, *Larkin v. Local No.* 560, 103 *N. J. Eq.* 195 *(Ch.* 1928); *Beatty v. Wunschel,* 122 *N. J. Eq.* 286 *(Ch.* 1937). *Cf.* the form of direction given in *Forrest v. Price,* 52 *N. J. Eq.* 16, 30 *(Ch.*

1893), affirmed on the opinion below 53 *N. J. Eq.* 693 *(E. & A.* 1895).

It is suggested that *R. S.* 2:15–11 is so worded that a warrant need not name the act upon which, by performance, the contemnor may obtain his liberty. The section relates in terms to the disobedience of an injunction. It had its origin in section 13 of the 1799 Chancery Act, Paterson, p. 430, the application of which was confined to a positive act of waste in violation of a prohibitory injunction. The 1902 *Chancery Act, ch.* 158, *P. L.* 1902, broadened the section under the title "Injunctions" *(sec. 69)* to a person charged with disobedience to any "injunction". "An injunction is defined to be a prohibitory writ to restrain one or more parties from doing, or permitting others under their control to do, an act deemed inequitable." *Dorrian v. Davis,* 105 *N. J. Eq.* 147, 152 *(Ch.* 1929). In *Staley v. South Jersey Realty Co., supra,* sharp cleavage was drawn between refusing to do an act commanded and the doing of an act forbidden. We find it unnecessary to deal further with that statute than to say that the contempt with which we are concerned is not for a violation of a prohibition but is for the refusal to do a commanded act and that, in any event, nothing therein varies the need for the mentioned specification in the order under review. An order in Chancery adjudging civil contempt and directing imprisonment for the obvious purpose of compelling obedience by one party for the benefit of another party should limit the period of imprisonment to the doing of the act. Effect should be given to the saying, quoted above and running through the books, that he who is guilty of a civil contempt has the keys of his prison in his own pocket. We have no doubt that such was the court's purpose and that such would have been the outcome, but it is desirable that the order and the warrant state the act the performance of which will later entitle the contemnor to an order of discharge. Not infrequently a clause is appended which reserves to the court the granting of an earlier discharge, such as, "unless the court shall deem it proper, for good reason shown, to sooner discharge him." *Forrest v. Price, supra.*

The third point on appellants' brief was waived at the oral argument.

The defendants have not yet been put in custody. The order appealed from will be modified to conform to this opinion, and as so modified affirmed. The record will be remanded with instructions to modify the order accordingly. Costs are not allowed.

*For modification:* Chief Justice VANDERBILT and Justices CASE, HEHER, WACHENFELD, BURLING, and ACKERSON—6.

*Opposed:* None.