42 N.J. Super. 282 (1956)
126 A.2d 233
IN THE MATTER OF THE APPLICATION TO CHARGE THE BOROUGH OF WEST WILDWOOD, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, THE MAYOR AND COUNCILMEN OF THE BOROUGH OF WEST WILDWOOD, WITH CONTEMPT OF COURT.
Superior Court of New Jersey, Chancery Division.
Decided October 15, 1956.
*283 Mr. Grover C. Richman, Jr., Attorney-General of New Jersey (Mr. Christian Bollermann, Deputy Attorney-General, appearing).
Mr. Edwin W. Bradway, attorney for the defendants.
HANEMAN, J.S.C.
By final decree dated July 3, 1934 the defendant Borough of West Wildwood was found guilty of polluting waters of the State of New Jersey. On July 10, 1934 a writ issued out of the Court of Chancery directing the borough to desist and refrain from permitting and allowing improperly, inadequately and insufficiently treated sewage to flow from the sewage system into the Post Creek, and to undertake the disposition of its sewage in a manner approved by the Department of Health of the State of New Jersey.
*284 From time to time this matter came before the court and additional time was granted to the Borough of West Wildwood to comply with the directions of the injunction. However, as a result of a series of actions, on July 14, 1955 the borough and its officials, i.e., Mayor Edwin A. Lusk, Councilman George H. Sloan and the late Councilman James B. Mitchell, were found guilty of contempt and a fine of $500 was levied against each of the individual defendants, and a fine of $5,000 was levied against the borough, with a daily penalty of $25 per day until compliance by the borough with the above referred to injunction.
The defendants have now made application for a remission of said fines.
The Attorney-General, upon the return day of the order to show cause, advised that there was no objection to the remission of the fines, except that he conceived that this was a criminal contempt and that this court was without jurisdiction to remit said fines.
The order citing the defendants to show cause why they should not be held guilty of the contempt charged them with a "criminal contempt." However, the judgment as entered does not disclose a determination of whether the contempt was civil or criminal, as required by R.R. 4:87-3. It is therefore necessary to first determine whether the contempts were civil or criminal.
"Contempts fall into two general categories or classes, i.e., civil contempt and criminal contempt. Although by their very basic nature the two are frequently, at least to some extent, merged in a given act and are sometimes confused, it may be stated that normally, a civil contempt is a contempt consisting in a failure to perform some act required or ordered to be done by a court for the benefit of the opposing party, and is therefore an offense against the party in whose behalf a violated order or judgment is made. The ultimate object of a civil contempt proceeding is the vindication of private rights. A criminal contempt, on the other hand, concerns itself with conduct directed against the authority or dignity of the court. It is an act tending to obstruct, hinder or hamper justice in its due course. The purpose of a criminal contempt is the vindication of public authority and the preservation of the dignity of the court. It involves the element of public injury or offense." In re Bozorth, 38 N.J. Super. 184 (Ch. 1955).
*285 "It is settled in our law that a criminal contempt proceeding is brought `to vindicate the authority of the court with the public on one side and the defendants on the other.' Swanson v. Swanson, 8 N.J. 169, 180 (1951). And violation of a judgment or order forbidding the doing of an act constitutes criminal contempt. Staley v. South Jersey Realty Co., 83 N.J. Eq. 300, 304 (E. & A. 1914); Gompers v. Buck's Stove & Range Co., 221 U.S. 418, 31 S.Ct. 492, 55 L.Ed. 797 (1911)." Whippany Paperboard Co., Inc., v. Local No. 301, etc., C.I.O., 11 N.J. 153 (1952). See also Nussbaum v. Hetzer, 1 N.J. 171 (1948).
"If the punishment is remedial and tends to coerce the individual to obedience, the contempt is civil. If it be only punitive, e.g., punishment for wrong accomplished, the contempt is criminal. In the latter cases the purpose is to vindicate the authority of the law; in the former to compel obedience. One who is imprisoned for a civil contempt is confined until he is ready to obey, which he may do at any time. The saying has it that he who is guilty of a civil contempt has the keys of his prison in his own pocket. In re Nevitt, 8 Cir., 117 Fed Rep. 448, 461. Punishment for civil contempt is intended to afford relief between the parties. Such punishment may be imprisonment or fines, to enforce obedience to the court's orders. As against this, a criminal contempt is essentially a public contempt." Markle v. Local Union No. 641, etc., 131 N.J. Eq. 202 (E. & A. 1942).
As in the proceedings concerning a similar dereliction in Department of Health of State of New Jersey v. Borough of Fort Lee, 108 N.J. Eq. 139 (Ch. 1931), and In re Borough of Fort Lee, 108 N.J. Eq. 425 (Ch. 1931), the contempt here is partially criminal and partially civil.
It is here concluded that the contempt of the borough was civil and that of the individuals was criminal.
Criminal contempts have been pardoned by the executive, but such power does not apply to civil contempts. In re Caruba, 142 N.J. Eq. 358 (Ch. 1948); In re New Jersey Court of Pardons, 97 N.J. Eq. 555 (1925); Ex parte Grossman, 267 U.S. 87, 45 S.Ct. 332, 69 L.Ed. 527 (1924); In re Nevitt, 117 F. 448 (8 Cir. 1902).
The power to remit fines vests solely in the Governor. Article V, Section II, par. 1 of the 1947 Constitution reads as follows:
"The Governor may grant pardons and reprieves in all cases other than impeachment and treason, and may suspend and remit fines *286 and forfeitures. A commission or other body may be established by law to aid and advise the Governor in the exercise of executive clemency."
At common law the power of the court to alter a sentence expired with the term of court at which sentence was imposed. R.R. 4:118-3 provides as follows:
"One term of court shall be held annually commencing at 10:00 o'clock in the forenoon on the first Wednesday after Labor Day in September, and shall be adjourned to such times as the court may from time to time designate."
By virtue of R.R. 3:7-13, "The court may reduce or change a sentence within 60 days from the date of the judgment of conviction." The contempt of the individuals being criminal, the above rules are applicable. Whether we conclude that R.R. 3:7-13 or the common law rule is here applicable, this court has lost whatever power it had to remit their fines or change their sentences. State v. Kowalczyk, 3 N.J. 231 (1949).
In civil contempt the power to modify, relieve, suspend or discharge a contemnor vests exclusively in the court which had jurisdiction to make orders or order commitment. In the quaint language of the cases, "He who is guilty of a civil contempt has the keys of his prison in his own pocket." In re Nevitt, supra; Nussbaum v. Hetzer, supra; McClung v. McClung, 33 N.J. Eq. 462 (Ch. 1881).
In re Nevitt, supra, the court said [117 F. 458]:
"The decision of this application rests upon another and upon an impregnable position. This is not a criminal, but a civil, contempt,  a proceeding instituted for the purpose of protecting and enforcing the private rights and administering the legal remedies of the judgment plaintiff, Douglas; and whatever the authority of the president may be to pardon for a criminal contempt, he is, upon principle and upon authority, without the power to relieve from either fine or imprisonment imposed in proceedings for contempts of this character. He has no more power to deprive private citizens of their lawful rights or legal remedies without compensation than have the courts or the congress.
* * * the circuit court, whose orders the judges of the county court are disobeying, has ample power to grant to them any relief *287 to which they are or may become entitled under the laws of the land and in view of the rights of the other parties to this litigation. City of New Orleans v. New York S.S. Co., 20 Wall. 387, 393, 22 L.Ed. 354; In re Debs, 158 U.S. 564, 566, 599, 15 S.Ct. 900, 39 L.Ed. 1092. The result is that the prayers of the judges of the county court of St. Clair county must be denied. But they are not remediless. They are imprisoned only until they comply with the orders of the court, and this they may do at any time. They carry the keys of their prison in their own pockets."
Such authority is as well implicit in R.R. 4:87-3.
It is therefore here held that this court is without power or authority to remit the fines of the individual defendants, but does have such power or authority insofar as the borough is concerned.
Accordingly, the application of the individuals will be denied, but that of the borough will be granted, upon condition that the fine so remitted will be used for the amortization of some portion of its bonded indebtedness (Krauss v. Krauss, 74 N.J. Eq. 417 (E. & A. 1908), the details of which shall be determined upon a hearing.
Judgment will be entered accordingly.