50 N.J. Super. 525 (1958)
142 A.2d 920
LEONARD LATHROP, PLAINTIFF,
v.
ALICE CONWAY LATHROP, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued June 16, 1958.
Decided June 24, 1958.
*527 Before Judges GOLDMANN, FREUND and CONFORD.
Mr. Robert V. Carton, as counsel assigned by the court, argued the cause for appellant in contempt.
Mr. William L. Boyan, Deputy Attorney General, argued in support of the contempt order (Mr. David D. Furman, Attorney General, attorney, at the direction of the court).
The opinion of the court was delivered by GOLDMANN, S.J.A.D.
Defendant appeals from a Chancery Division order committing her to 30 days in the county jail for violating the terms of a previous order whereby she had been found guilty of contempt of court and sentenced to jail for a like term, sentence being suspended and defendant placed on two years' probation. We assigned counsel to prosecute her appeal after she had filed a brief and appendix pro se. The Attorney General has, at the request of the court, undertaken to support the order under attack.
This appeal is but one more facet of an extended and bitterly contested matrimonial action which began in September 1953 when plaintiff filed a complaint for divorce on the ground of extreme cruelty. Defendant counterclaimed for dissolution of the marriage on the same ground. Judgment nisi went in plaintiff's favor on March 23, 1956. It awarded custody of the minor children of the marriage to defendant mother and provided for right of visitation in the father. The judgment nisi was recently affirmed by this court on attack upon both its divorce and the visitation provisions.
On June 13, 1956 plaintiff filed a notice of motion to hold defendant in contempt for failure to allow him his visitation *528 rights. There was a hearing on June 23 and 29, 1956, but it was continued on defendant's representation that she would obey the judgment nisi. The matter came on again in early September and was then scheduled for October 4. On that day there was a postponement to October 11, 1956, at which time County Court Judge Bennett, specially assigned by the Chief Justice temporarily to hear matrimonal matters in the vicinage, found defendant guilty of civil contempt for willfully and without just cause failing to comply with the custody and visitation privileges of the judgment nisi. Sentence was postponed until the Monmouth County Probation Office could complete its pre-sentence investigation. (The body of the order signed by the judge carries the typed date of October 4, 1956. It had been prepared by plaintiff's attorney, apparently in the expectation that it would be signed on that day. When the contempt hearing was continued to October 11, the date by inadvertence remained unchanged.)
The parties and their counsel again appeared in court on January 11, 1957. What happened then is important to our determination and should be detailed. In the course of the colloquy preceding sentence Judge Bennett expressed the view that in the circumstances it would be best to impose "a suspended sentence for contempt of court, execution suspended, probation imposed, not so much for the purpose of weekly supervision, but it would give the court the power summarily to revoke probation and remove the suspension of sentence if there be a future defiance of the court order. * * * I think this defendant would realize the effect of any defiance of the court order. Summarily she could be brought in court and put in jail." When defendant's counsel inquired whether there was anything his client had to do to comply with probation, the judge stated that he would get in touch with the Chief Probation Officer of Monmouth County and "explain what I want." He then formally announced:
"I will give a thirty-day Monmouth County jail term for the contempt of Court, execution of which is vacated, and she will be placed on this modified probation for a period of two years. I will *529 get in touch with the Probation Officer and tell him what I want, and I want it understood between counsel and all concerned that complete, strict compliance is expected.
If we don't have it, just inform me informally, and summarily it can be brought to the attention of the Court and I will impose the last final rite. I hope it won't be necessary, believe me."
When defendant's attorney asked whether weekly reporting would be required as part of the probation, the judge said it would not, adding that if he got notice of a violation of the order, either from the Probation Department or counsel, the matter could be brought before him in a routine way. No order setting out the suspended sentence and the two-year probation imposed, or the terms of such probation, has ever been entered.
Plaintiff having complained again that his visitation rights were being disregarded, Judge Bennett wrote the following letter to defendant on July 30, 1957:
"Dear Mrs. Lathrop:
Reports have come to my attention that you have not complied with the order of the court respecting custody and visitation of the children which may be true or untrue. In view of the fact that I resolved prior claims to this effect some months ago in Freehold, N.J., and concluded that you were in contempt of court, it is my feeling that the present reports, if true, seriously reflect upon the powers of the court. I am, therefore, communicating with the Probation Department of Monmouth County with the request that these reports be investigated and this may eventuate in a formal hearing, on notice, before me respecting my determination of contempt.
 Very truly yours,
 s/ Clifton C. Bennett"
Upon receipt of a copy of this letter by the Monmouth County Probation Office, Mrs. Zeller, one of the probation officers, was assigned to interview defendant.
Mrs. Zeller called on defendant at her home on August 13, 1957, introduced herself, and explained that she had come to talk about visitation for the children. Defendant refused to discuss any aspect of visitation on the grounds that she had an appeal pending (the reference was to her appeal from the divorce judgment), and also was awaiting a court *530 order on a motion just heard in the Chancery Division, involving her daughter's attendance at a California college. She considered the probation officer's questions concerning her intent to live up to the visitation order improper. (The exact question put by Mrs. Zeller was whether defendant planned to let plaintiff have the children for a week that summer, as he was supposed to.) Mrs. Zeller then wrote Judge Bennett, reporting what had happened at the interview. Defendant requested and received a copy of this report.
On September 11, 1957 Judge Bennett wrote plaintiff's attorney, copy to defendant, that "I persist in my feeling that Mrs. Lathrop should be brought before me as suggested in my telephone conversation with you and I await your reply." There is no indication in the record of any answer to this suggestion. What happened next was that on October 17 the Chief Probation Officer of Monmouth County wrote defendant stating that he had been directed by Judge Bennett to notify her to be present before him at the Mercer County Court House, Trenton, on October 25 
"At that time it will be alleged you violated your probation in that you refused to cooperate with a probation officer who was directed by Judge Bennett to investigate your alleged failure to comply with his order regarding visitation.
The alleged failure to cooperate took place when Mrs. Zeller from this department attempted to discuss visitation with you."
Upon defendant's request for a postponement the matter was adjourned to November 1.
At the hearing on that date defendant requested a trial by jury. This was denied, as was her request for counsel. Mrs. Zeller testified as to her interview with defendant on August 13. Her testimony was in close agreement with defendant's. No evidence was presented as to whether or not defendant had violated the visitation provisions of the judgment nisi. The following excerpts from the court's statements are pertinent:
"* * * Now, having imposed a suspended sentence and probation, the terms of which were strict compliance with the order, when *531 an officer of this court, at my behest, calls for information regarding compliance with that very order on which you were sentenced I would conclude that it would devolve upon you to speak up.

* * * * * * * *
* * * You have placed yourself in this position: I notified you that an investigation would be made by the Probation Department. An officer from the Probation Department called upon you for that purpose but did not get the information requested, which I regard as a violation of probation.

* * * * * * * *
* * * As I view this transaction, and when I saved you from a prison sentence when you came before me, I put it on the basis that there would be strict compliance with that court order. Now, you will note that I have not gone into the details of the accusations of whether or not there was compliance or not. I am putting it on the basis that by refusing to discuss this thing with an officer of my court that that in itself is an affront to the court, for which probation will be revoked and I will impose a sentence of 30 days in the Monmouth County Jail effective 15 days from today."
The following order was then signed by Judge Bennett (it has not as yet been filed in the Chancery Division action):
"The defendant having been held in contempt of court and having been sentenced to 30 days in the Monmouth County Jail and 2 years probation, and the term in jail having been suspended, and defendant having violated the terms of this sentence;
It is ORDERED, on motion of the court, that the defendant be placed at the bar, and she being accordingly set to the bar, the Court does order and adjudge that the defendant Alice (a/k/a Alyce) Conway Lathrop be imprisoned in the Monmouth County Jail for a term of 30 days commencing on Monday, November 18, 1957.
 S/ Clifton C. Bennett, J.S.C.
 By Special Assignment of Chief Justice"
Execution of the sentence was stayed by the Appellate Division pending defendant's appeal, and counsel appointed to file a supplemental brief and argue the cause orally on defendant's behalf.
One further matter should be mentioned in view of the argument (noted hereafter) as to Judge Bennett's authority to act. On July 20, 1956 the Chief Justice had by order directed that Judge Bennett, in addition to his regular duties as Mercer County Court judge, be assigned to the Chancery Division of the Superior Court to hear matrimonial matters arising in Monmouth and Ocean Counties in Vicinage No. 3, *532 effective September 5, 1956 and "until further order." Judge Bennett, therefore, was authorized to hear matrimonial matters in October 1956 when the original contempt proceedings were brought before him. Just when his assignment ended is not known, but Judge Bennett was not included in the assignments to the Superior Court, Chancery Division, for the summer recess of 1957, nor in connection with the fall term starting September 5, 1957. However, on October 17, 1957 the Chief Justice directed that in addition to his regular assignment Judge Bennett was temporarily assigned to the Chancery Division "for the purpose of hearing and concluding any and all matters pertaining to the case of Lathrop v. Lathrop, Docket No. M-277-53."
The briefs reflect the difficulty experienced by both counsel in determining whether the proceeding before Judge Bennett leading to the order under appeal was a contempt proceeding under N.J.S. 2A:10-1 et seq. and R.R. 4:87-1 et seq., or a proceeding to revoke probation and impose sentence under N.J.S. 2A:168-4. The argument of the Attorney General leans toward the latter conclusion, and that of defendant's assigned counsel toward the former, although his brief also deals with the matter as a proceeding for revocation of probation.
Briefly, defendant argues that: (1) there is no basis to hold defendant in contempt because no order of the court is shown to have been violated; the July 30, 1957 letter did not constitute an order directed to her, and if it did, it was issued by Judge Bennett without authority because his assignment to sit in matrimonial matters had expired before that date; (2) the judge should have disqualified himself, since it was his order that was not obeyed, quoting R.R. 4:87-2(e) (without quoting, however, the most recent amendment of the rule which added the italicized language which follows: "If the substance of the charge is a violation of an order or judgment of the court, the judge who made the order or judgment is likewise disqualified, except that proceedings charging contempt of an order issued in aid of judgment or execution may be heard by the judge who made such order"); *533 (3) the proof was insufficient to support a finding of contempt; (4) defendant was denied due process of law under the State and Federal Constitutions because notice of the hearing was inadequate, she was denied defense counsel, and the judge acted as prosecutor, judge and jury; and  here defendant's argument turns from treating the proceeding before Judge Bennett as one in contempt to one for revocation of probation  (5) probation cannot be revoked, absent proof of violation of its terms and conditions; (6) the court did not have the right to impose a prison sentence for a definite term after revoking the probation, since the original conviction of contempt, on October 11, 1956, was expressly stated to be for civil contempt and, finally, (7) denial of due process on this aspect of the case.
In our view, the proceedings before Judge Bennett leading to the order of November 1, 1957 related to revocation of probation, not punishment for contempt. Although the letter he wrote defendant on July 30, 1957, with its reference to alleged violations of the visitation provisions of the judgment nisi, points in the direction of contempt of court, the Chief Probation Officer's letter of October 17, 1957 clearly notified defendant that she would be charged with violation of probation for her refusal to cooperate with the probation officer who made the investigation. And such was the theme of Judge Bennett's remarks at the hearing before him on November 1 when he said he considered defendant's refusal to talk to the probation officer, after being notified by the court that it was ordering an investigation, a violation of probation; and that he was not going into the question of whether or not there was a compliance with the court order, i.e., the judgment nisi, but was proceeding on the basis that by refusing to discuss the matter with the probation officer there was an affront to the court for which probation would be revoked. Admittedly the matter becomes less clear when one reads the order here under appeal, which speaks in terms of the defendant having violated "the terms of this sentence [of January 11, 1957]," but a fair analysis of the entire proceedings convinces us that the court was dealing with revocation *534 of probation, and not a separate and independent contempt of court.
Although probation was recognized at common law as an important part of our criminal jurisprudence, it is now provided for by statute. N.J.S. 2A:168-1 et seq.; Adamo v. McCorkle, 13 N.J. 561, 563 (1953). N.J.S. 2A:168-1 gives the courts of this State having jurisdiction over criminal or quasi-criminal actions the power to suspend sentence and place a defendant on probation where it appears that the best interests of the public as well as of the defendant will be subserved thereby. N.J.S. 2A:168-2 provides that:
"The court shall determine and may, at any time, modify the conditions of probation, and may, among others, include any of the following: That the probationer shall avoid injurious, immoral or vicious habits; shall avoid places or persons of disreputable or harmful character; shall report to the probation officer as directed by the court or probation officer; shall permit the probation officer to visit him at his place of abode or elsewhere; shall answer all reasonable inquiries on the part of the probation officer; shall work faithfully at suitable employment; shall not change his residence without the consent of the court or probation officer; shall pay a fine or the costs of the prosecution, or both, in one or several sums; shall make reparation or restitution to the aggrieved parties for the damage or loss caused by his offense; shall support his dependents." (Italics ours)
Where the probationer has violated any of the conditions of his probation, the court may, after report by the probation officer showing the manner in which the probationer has violated his probation, proceed by summary hearing and revoke the probation and suspension of sentence, and "cause the sentence imposed to be executed or impose any sentence which might originally have been imposed." N.J.S. 2A:168-4.
When Judge Bennett on January 11, 1957 imposed the 30-day suspended sentence and put defendant on two years' probation, he imposed no conditions of probation other than strict compliance with the visitation provisions of the judgment nisi. He did not direct her to report to the probation officer  in fact, he stated this was unnecessary; he did not order defendant to permit the probation officer to visit her *535 at her place of abode, nor did he direct that she answer all reasonable inquiries on the part of such officer. N.J.S. 2A:168-2. Whatever injunction was laid upon defendant was by oral command, for no order was ever entered.
Nor can a condition of probation be spelled out, except by way of broadest implication, from the letter which the judge wrote to defendant on July 30, 1957. Indeed, the State expressly disavows that the letter had any such effect, but relies entirely upon what was said in open court on January 11 preceding.
We pass the question of whether the failure to enter a formal order on January 11, 1957 embodying the suspended sentence and probation was fatal to the subsequent proceedings. What is important is that the court did not, except for ordering defendant to comply strictly with the visitation provisions of the judgment nisi, at any time determine the terms and conditions of her probation. If conditions of probation are to be imposed, the court must expressly state them. State v. Haber, 132 N.J.L. 507, 511 (Sup. Ct. 1945). Such provisions, prohibitory or mandatory, should be clearly set out and not left to implication, for what is involved is nothing less than the liberty of the individual. Before a person is subject to punishment for violating a command of the court, he should be informed in definite terms as to the duties imposed upon him. See Berry v. Midtown Service Corp., 104 F.2d 107, 122 A.L.R. 1341 (2 Cir. 1939), certiorari dismissed 308 U.S. 629, 60 S.Ct. 297, 84 L.Ed. 525 (1939). Aside from enjoining strict compliance with the visitation order, the entire matter of probation was left in a nebulous state. We will not hold that when the court stated, "I will get in touch with the probation officer and tell him what I want," defendant should thereby have understood that she was to cooperate in every and any respect with the probation officer and, in the language of N.J.S. 2A:168-2 "answer all reasonable inquiries" on his part.
Since the order of November 1, 1957 must be set aside, our attention turns once again to the proceedings before *536 Judge Bennett on January 11, 1957. They have never been formalized by the entry of an order imposing sanctions for the civil contempt of which he found defendant guilty. A proper order should now be entered by Judge Bennett, pursuant to his continuing authority under the October 17, 1957 order of the Chief Justice mentioned above.
For the guidance of the trial court in framing its order we note that in a civil contempt the proceeding is essentially remedial. It is a step in the cause, and its object is to coerce one party for the benefit of another party to do or refrain from doing some act specified in the order of the court. Therefore, if imprisonment be ordered it is remedial in purpose although coercive in character, and to that end must relate to something to be done by the accused who, by compliance, may discharge himself. Staley v. South Jersey Realty Co., 83 N.J. Eq. 300, 303 (E. & A. 1914); Swanson v. Swanson, 10 N.J. Super. 513, 518 (App. Div. 1950), affirmed 8 N.J. 169 (1951).
R.R. 4:87-3 fully reflects this view:
"* * * Where the contempt is primarily civil in nature and the person in contempt shall have disobeyed a judgment, order or process of the court, he shall stand committed and remain in close custody until the judgment, order or process is obeyed and performed and until such fine as may be imposed for his contempt in accordance with N.J.S. 2A:10-5, with costs, is fully paid, or until the further order of the court. * * *"
The provision for imprisonment until the offender has purged himself of contempt is the same as formerly contained in R.S. 2:15-7 applicable to the old Court of Chancery. It was deleted from the statutes and inserted in the rules of court at the time of the revision of Title 2, leaving only that part of R.S. 2:15-7 (now N.J.S. 2A:10-5) which provides for a fine not exceeding $50 payable to the clerk of the court. The clear purpose of the rule, like that of its predecessor statute, is to compel obedience; any order directing imprisonment for civil contempt "should limit the period of imprisonment to the doing of some act. Effect should be *537 given to the saying * * * that he who is guilty of civil contempt has the keys of his prison in his own pocket." Nussbaum v. Hetzer, 1 N.J. 171, 176 (1948), where the form of the order is discussed.
In the ordinary civil contempt case the offender can purge himself by the doing of a single act called for by the order. Here, however, we deal with a situation where defendant is required to perform a continuing series of acts, namely, to have the children available for visitation with their father every week at a stated time, on holidays, and for a full week during the summer vacation period. The framing of an effective order is not without its difficulties and calls for a certain flexibility of approach by the trial court.
There is a serious question, in light of the authorities, whether a fixed sentence can be imposed for civil contempt in a situation such as is here involved, where defendant cannot purge herself simply by doing a single act. The Attorney General argues that a fixed sentence is the only practical means of coercion in the present circumstances. However, other approaches suggest themselves. A fine could be imposed under N.J.S. 2A:10-5, although here the court might be met with defendant's claim of indigency. With or without a fine, she could also be committed to jail until such time as she promises to comply strictly with the visitation order. The trial court in its discretion could direct a transfer of custody to the father (if he is able to care for them properly) until such time as defendant agrees to live up to the letter and spirit of the existing custody and visitation arrangements. Breach of that promise could promptly be dealt with by the court as a criminal contempt, punishable by imprisonment for a definite term.
Whatever the order that the court below may enter on its specific finding in October 1956 of defendant's civil contempt, we want to make it entirely clear that what we have said is without prejudice to the right of plaintiff, and indeed the duty of the Chancery Division, to see to it that its visitation order is obeyed. That order has never been suspended and the court is free to proceed against the defendant for *538 any violation of it, past or future, as a civil or, possibly, a criminal contempt.
Our resolution of the appeal in light of the statute relating to conditions of probation and the absence of proof at the November 1, 1957 hearing that any such condition had been violated makes unnecessary any further discussion of the points raised by defendant's assigned counsel.
The order under review is reversed and the matter remanded for proceeding in accordance with this opinion.